IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BROTHERHOOD MUTUAL INSURANCE COMPANY, | : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 23-678 |
| v. | : : : | |
| FIRST PRESBYTERIAN CHURCH OF BETHLEHEM; GLEN ADELSBERGER; LINDA BARTHOLOMEW; SUE BOEHRET; KEVIN BURNS; WILLIAM JONES, II; JESSICA MANNO; RANDY STONESIFER; CABOT THOMAS; WARREN WAITE; TERRY CLINE; TOM LUBBEN; MIKE BAITINGER; JOHN EDWARDS; STEVE FOLLETT; ERIC HUBER; LIZ KIDNEY; MARK LANG; DIANNE MCALOON; AUDREY NEY; STEVE ROWBOTTOM; VICKIE CLARK; RYAN HARTING; ROBERT V. LITTNER; JAMES OMDAHL; PETER YOUNG; P. CHARLES WALTER; JOHN LEWIS; CLARK RUTHRAUFF; ROBERT PRICE; SUSAN STEVENS; and CINDY WISEMAN, | : : : : : : : : : : : : : : : : : : | |
| Defendants. | : : | |

### MEMORANDUM OPINION

Smith, J.                                                                                                   November 7, 2023

An insurer seeks a declaratory judgment that it has no duty to defend or indemnify its insured and 31 individuals covered by the insurance policy in an underlying state court action. The underlying action stems from something of a religious schism within the First Presbyterian Church of Bethlehem, Pennsylvania, where the defendants are alleged to have taken unauthorized actions to affiliate the church with a different denomination.

The 31 individual defendants have jointly filed a motion to dismiss for lack of subject-matter jurisdiction.[1] The Individual Defendants, who are also defendants in the underlying state court action, argue that the court should exercise its discretion under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, and decline to exercise jurisdiction of this case. In their view, the pending state court action is the better forum for resolution of the insurance coverage issue. The plaintiff, which is not a party to the state court action, argues the opposite, and urges the court to deny the motion and retain jurisdiction. For the reasons set forth below, the court will deny the Individual Defendants' motion and elect to exercise jurisdiction over this case.

## I. ALLEGATIONS AND PROCEDURAL HISTORY

As one might expect from an action with its roots in a religious schism, this case has a long, convoluted history. A detailed look at the factual background is unnecessary to resolve the current motion, and thus the court will limit its recitation of the facts. The court explains in brief, assuming all facts from the complaint as true and working from the schism up to the present case.

In 2016, the Individual Defendants were members of the First Presbyterian Church of Bethlehem ("FPCB") and, at various times between 2016 and 2018, were members of the "Session," or the group of trustees of FPCB.[2] Compl., Ex. A, State Ct. Compl. at ¶ 32, Doc. No. 1-3. The FPCB is a church within the Presbyterian denomination. *Id.* at ¶ 33. Beginning sometime in or before 2016, the Individual Defendants are alleged to have splintered from the FPCB to create a new church, the Covenant Order of Evangelical Presbyterian Denominations or "ECO."[3] *Id.* at ¶ 50. The new church eventually came to be known as Grace Church Bethlehem. *See id.* at ¶ 57. As

---

[1] These are the 31 individuals named in the caption. They are commonly represented, and for ease of reference the court will hereafter refer to them as the "Individual Defendants."
[2] During oral argument, counsel explained that the "Session" is essentially equivalent to a board of directors or group of trustees.
[3] During oral argument, counsel indicated that this occurred after disagreements emerged over church doctrine, with two factions dividing along "liberal" and "conservative" lines. Most, if not all, of the Individual Defendants apparently belonged to the conservative faction.

part of the split, the Individual Defendants are alleged to have improperly transferred funds belonging to FPCB and to have taken other actions to FPCB's detriment. *See id*. at ¶¶ 60–78.

The schism then spiraled into two lawsuits. The first, *First Presbyterian Church of Bethlehem, Pennsylvania (FPCB) v. Lehigh Presbytery and Presbyterian Church (PCUSA)*, No. 2016-cv-5128 (Northampton Cnty. Ct. Com. Pl.), filed on June 10, 2016, was brought by the break-away (apparently) conservative faction of the congregation, which included some or all of the Individual Defendants. *See* Compl. at 5–6, Doc. No. 1. In this first case, the plaintiffs asserted a request to quiet title to the real property located at 2344 Center Street, Bethlehem, Pennsylvania, as well as a declaration that FPCB was not covered by the trust clause provisions of the Book of Order of PCUSA. *See id.* at 6. The second case, *Lehigh Presbytery, et al. v. First Presbyterian Church of Bethlehem, Pennsylvania*, No. 2016-cv-5537 (Northampton Cnty. Ct. Com. Pl.), filed on June 21, 2016, was brought by the denominational leadership of the Presbyterian Church and sought a declaration to enforce the trust clause of the Constitution of the PCUSA Book of Order, which mandated that all property of FPCB was held in trust for the Lehigh Presbytery and PCUSA. *See id*.

The two matters were consolidated, and the Honorable Stephen G. Baratta held a bench trial in August 2017. *See id*. On December 12, 2017, Judge Baratta entered an order denying FPCB's request to quiet title and declaring that the title to all real and personal property held or owned by FPCB was held in trust for the Lehigh Presbytery. *See id*.

After Judge Baratta's decision in the consolidated cases, a third state court action was filed, *The Lehigh Valley Presbytery and First Presbyterian Church of Bethlehem, Pennsylvania v. Glen Adelsberger, et al.*,[4] No. 2019-cv-11805 (Northampton Cnty. Ct. Com. Pl.) (the "Underlying

---

[4] The state court complaint names the same 31 individual defendants who are the Individual Defendants in this action.

Action"). *See id*. at ¶ 38. The Underlying Action seeks to build on the previous declaratory judgment and to recover the funds allegedly diverted from FPCB at the direction of the Individual Defendants in their role as members of FPCB's Session. *See* State Ct. Compl. at ¶¶ 79–119.

Turning now to the instant action, the plaintiff, Brotherhood Mutual Insurance Company ("Brotherhood"), commenced this action on February 22, 2023, by filing a declaratory judgment complaint against FPCB and the Individual Defendants. *See* Doc. No. 1. In the complaint, Brotherhood avers that it issued an insurance policy to FPCB for the period of June 27, 2017, to June 27, 2018 (the "Policy"). *See* Compl. at ¶ 43. The Policy included, *inter alia*, commercial liability coverage, directors and officers liability coverage, and legal liability defense reimbursement coverage. *See id.* at ¶¶ 45–46, 48.

Brotherhood seeks a declaratory judgment that the Policy does not afford coverage for the claims brought in the Underlying Action and that Brotherhood has no duty to defend or potentially indemnify the Individual Defendants or FPCB in that action. *See id.* at 28–29. In response, the Individual Defendants filed the instant motion to dismiss on March 28, 2023. *See* Doc. No. 11. On May 2, 2023, Brotherhood filed its response in opposition to the motion. *See* Doc. No. 20. FPCB also filed a response to the motion in which it takes no position, but requests that the court's ruling on the motion apply to all defendants. *See* FPCB Resp. to Mot. at 1, Doc. No. 23. On June 20, 2023, the court held oral argument on the motion. Doc. No. 25. The motion is ripe for disposition.

## II.   DISCUSSION

The Individual Defendants move to have this court dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1), which allows a party to assert that a district court should dismiss a pleading for lack of subject-matter jurisdiction. Although this is a Rule 12(b)(1) motion, the Individual Defendants are not actually challenging whether this court has subject-matter

jurisdiction over this action;[5] instead, they are asking this court to decline to exercise jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02 ("DJA"). *See DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192, 196 (3d Cir. 2021) ("[A] district court may abstain from hearing a declaratory judgment action that is properly within the court's subject matter jurisdiction."); *Main St. Am. Assurance Co. v. United Insulation Servs., Inc.*, Civ. A. No. 20-3430, 2022 WL 970841, at *5 (E.D. Pa. Mar. 31, 2022) ("[E]ven when subject matter jurisdiction exists, district courts have substantial discretion to decline jurisdiction and abstain from hearing a declaratory judgment action." (citations omitted)).

The DJA provides that courts "may declare the rights and other legal relation of any interested party seeking such declaration." 28 U.S.C. § 2201. The "statute's textual commitment to discretion" vests federal courts with "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (citations omitted). Nevertheless, while "the Supreme Court has . . . framed DJA discretion in broad terms," it has also made the point that a court's exercise of that discretion "is bounded and reviewable." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 139–40 (3d Cir. 2014).

Courts apply a multi-factor test when considering whether to exercise jurisdiction over a declaratory judgment action. *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 282 (3d Cir. 2017). First, a court must determine if a "parallel state proceeding" is currently pending. *Id*. While not dispositive, the parallel state proceeding factor is first among equals: the existence of parallel state proceedings "militates significantly in favor of *declining* jurisdiction," while the absence of

---

[5] The DJA "does not independently grant subject-matter jurisdiction." *Temple Univ. Hosp., Inc. v. Sec. U.S. Dep't of Health and Human Servs.*, 2 F.4th 121, 132 (3d Cir. 2021) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937) and *Allen v. DeBello*, 861 F.3d 433, 444 (3d Cir. 2017)). Here, subject-matter jurisdiction is founded on diversity of citizenship under 28 U.S.C. § 1332(a), and the Individual Defendants have not challenged this aspect of jurisdiction.

5

parallel state proceedings "militates significantly in favor of *exercising* jurisdiction." *Id*. (citing *Reifer*, 751 F.3d at 144–45 (emphasis added)).

A parallel proceeding is a pending matter in which the parties and claims in state court match the parties and claims in federal court. *See Wilton*, 515 U.S. at 283. "[P]arallel proceedings are those that are truly duplicative, that is, when the parties and the claims are identical, or at least effectively the same." *Kelly*, 868 F.3d at 285 (citations and internal quotations omitted). Importantly, "mere potential or possibility that two proceedings will resolve related claims between the same parties is not sufficient to make those proceedings parallel[.]" *Id*. at 283–84.

After considering parallelism of proceedings, courts should then weigh the following eight and other factors to the extent each is relevant:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
>
> (2) the convenience of the parties;
>
> (3) the public interest in settlement of the uncertainty of obligation;
>
> (4) the availability and convenience of other remedies;
>
> (5) a general policy of restraint when the same issues are pending in a state court;
>
> (6) avoidance of duplicative litigation;
>
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and
>
> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Reifer*, 751 F.3d at 146. "[T]his list of factors is not exhaustive and . . . other considerations might be relevant in the appropriate case." *Kelly,* 868 F.3d at 282 n.6. For example, if faced with "duplicative and piecemeal litigation" or "when applicable state law is uncertain or undetermined,

6

district courts should be particularly reluctant to exercise DJA jurisdiction." *Reifer*, 751 F.3d at 141 (internal quotation marks omitted) (citing *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 135 (3d Cir. 2000)).

The court will now conduct the inquiry *Riefer* requires to determine if retaining jurisdiction over this action is warranted.

### A. Existence of Parallel Proceeding in State Court

This case is not a parallel proceeding to the Underlying Action currently pending in state court. Brotherhood is not a party to the Underlying Action. That alone is enough to compel the conclusion that this action is not parallel to the state court matter. *See Kelly*, 868 F.3d at 285.

But there is more. The claims brought in the Underlying Action are not comparable to the claim brought in this suit. In the Underlying Action, the claims are for (1) accounting at law, (2) equitable accounting, (3) breach of fiduciary duty, and (4) breach of trust. *See* State Ct. Compl. at ECF pp. 13–19. In this court, Brotherhood asserts a single claim requesting a declaratory judgment on the scope of insurance coverage. *See* Compl. at 22. These are not the same claims. Resolution of the claims in the Underlying Action will not answer the question of insurance coverage brought here. *See Kelly*, 868 F.3d at 285.

Despite Brotherhood not being a party in the Underlying Action and the differences in the claims presented in that case and the instant case, the Individual Defendants assert that "the claims in this matter are more properly addressed by the Court of Common Pleas of Northampton County." Br. of Defs. in Supp. of Mot. to Dismiss ("Defs.' Br.") at ECF p. 6, Doc. No. 11-1. This stand-alone assertion, however, is not buttressed by any explanation as to how the issue of insurance coverage would ever get before the state court in the Underlying Action. This lack of

explanation makes sense, considering this court can think of no procedure by which the instant coverage dispute would be presented to the state court.

The court also notes that the Individual Defendants rely on this court's decision in *State National Insurance Co., Inc. v. Landis*, Civ. A. No. 14-607, 2015 WL 291722 (E.D. Pa Jan. 15, 2015) (Smith, J.), in support of their parallel proceeding argument. *See* Defs.' Br. at ECF p. 6. Their reliance is misplaced. *Landis* was decided prior to the Third Circuit Court of Appeals' decision in *Kelly*, at a time when courts applied a broader understanding of what constituted a parallel state proceeding. *See, e.g.*, *Landis,* 2015 WL 291722, at *8 (focusing on the "potentiality of the state action" to resolve the claims and stating that the "operative inquiry is whether Pennsylvania law renders the [state court] action procedurally and substantively competent to adjudicate the coverage issues raised in the instant action"). *Kelly* and other subsequent cases, however, narrowed the definition of parallel proceedings. 868 F.3d at 284–85 (explaining that parallel proceeding analysis requires courts to consider "the state and federal action as they contemporaneously exist, not as they might eventually be"). Thus, it is not enough that the state court action "presents the opportunity for ventilation of the same state law issues" or that the resolution of common factual issues will "likely be necessary." Defs.' Br. at ECF p. 7. Instead, under current law, this potential parallelism does not weigh in favor of this court declining jurisdiction under the DJA. *Kelly*, 868 F.3d at 286. Rather, this first factor weighs in favor of the court exercising jurisdiction. *See Reifer*, 751 F.3d at 144 ("[T]he absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction . . . .").

### B.   Consideration of Additional Factors

Although the lack of a parallel state proceeding strongly favors this court exercising jurisdiction, it does not end the inquiry. The court must still "giv[e] meaningful consideration" to

the eight *Reifer* factors identified above, as well as any "other relevant case law or considerations." *Reifer*, 751 F.3d at 146 (footnote omitted). The scales, however, are already tipped, and these additional factors must outweigh the lack of a parallel proceeding to now justify declining jurisdiction. *Kelly*, 868 F.3d at 288.

### 1. Likelihood that a Federal Court Declaration Will Resolve the Uncertainty of Obligation

It is likely that "a federal court declaration [would] resolve the uncertainty" of the insurance coverage issue. *Reifer*, 751 F.3d at 146. After all, "it is the function of the court to interpret insurance contracts under Pennsylvania law." *Am. Auto Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011) (citations omitted). While a declaration by this court would not end all litigation flowing from the events of the schism, it would nevertheless "bring about a complete termination of the parties' [insurance coverage] disputes without piecemeal litigation." *DiAnoia's Eatery*, 10 F.4th at 206. Thus, this factor weighs in the favor of exercising jurisdiction.

### 2. The Convenience of the Parties

Trying this case in federal court would be no more or less convenient to the parties than it would be to try it in the Northampton County Court of Common Pleas. No great hardships of travel are involved – the courthouses are less than a mile apart. Thus, this factor is neutral.

### 3. The Public Interest in Settlement of the Uncertainty of Obligation

The background of this case presents heightened public interest concerns, a great deal more than the "usual interest in the fair adjudication of legal disputes." *Kelly*, 868 F.3d at 288 (footnote omitted). The schism from which this case grew reveals deep divides in a prominent local congregation. The debate over dogma has devolved into a dispute about dollars. Now, local citizens who once worshipped together find themselves on opposite sides of a courtroom. And not just once: this is the fourth lawsuit filed in the wake of the schism. Allowing these proceedings to

play out in state court keeps an action with serious public interest concerns in the hands of those closest to that interest, and avoids elevating highly contentious local issues into a new, federal forum. The court finds these public interest concerns weigh in favor of declining jurisdiction.

### 4. The Availability and Relative Convenience of Other Remedies

The fourth factor, "the availability and relative convenience of other remedies," is neutral. *Kelly*, 868 F.3d at 283. The insurance policy contains a binding arbitration clause. *See* Compl., Ex. B, Policy at ECF p. 303, Doc. No. 1-4. While a declaratory judgment action is the primary means through which an insurer may resolve questions concerning the duties owed to its insured, the arbitration provision in the contract provides an alternative forum, and possibly a mandatory alternative forum, to resolve the dispute. *See Step Plan Servs., Inc. v. Koresko*, 12 A.3d 401, 419 (Pa. Super. 2010) ("It is common practice for insured and insurance companies to file declaratory judgment actions when there is a dispute regarding whether the insurer has a duty to defend and/or indemnify . . . ." (citation and internal quotation marks omitted)). There is no reason to believe that arbitration would be less convenient to the parties than litigation in this court. Moreover, this court is just as suitable a forum as a state court to decide if the arbitration clause is binding. At this motion to dismiss stage, the court can elect to exercise jurisdiction without also addressing any possible arbitrability issue. Therefore, this fourth factor is neutral.

### 5. A General Policy of Restraint When the Same Issues are Pending in State Court

The fifth factor weighs in favor of exercising jurisdiction. "The fifth factor's policy of restraint is applicable only when the same issues are pending in state court between the same parties . . . ." *DiAnoia's Eatery*, 10 F.4th at 206 (citation and internal quotation marks omitted). As previously discussed, the issue of insurance coverage is not pending in state court, nor is Brotherhood a party to that action.

### 6. Avoidance of Duplicative Litigation

Allowing this case to proceed here does not duplicate state litigation. While this case and the pending state court case may share a common factual background, the cases are not duplicative because the parties and claims are distinct. This factor weighs in favor of exercising jurisdiction.

### 7. Prevention of the Use of the Declaratory Judgment Action as Method of Procedural Fencing or as a Means to Provide Another Forum in a Race for *Res Judicata*

This action does not appear to be filed as part of a strategy to achieve *res judicata* in another forum, nor is there any allegation of improper motives by Brotherhood. *See Kelly*, 868 F.3d at 289 (noting that, when considering this seventh factor, a lack of improper motives by the plaintiff favored a finding in favor of retaining jurisdiction). Brotherhood cannot use a decision by this court as grounds for *res judicata* in another forum because the claims presented here are not pending in any other court. *Cf. Summy*, 234 F.3d at 136 (finding "gratuitous interference with state court litigation" and concluding that district court should have declined jurisdiction of declaratory judgment action when, *inter alia*, defendant in federal court action had filed identical action in state court (citation omitted)). Accordingly, this factor weighs in favor of exercising jurisdiction.

### 8. An Inherent Conflict of Interest Between an Insurer's Duty to Defend in a State Court and its Attempt to Characterize that Suit in Federal Court as Falling Within the Scope of a Policy Exclusion

There is no conflict in Brotherhood's position here and the pending litigation in state court. Under Pennsylvania law, Brotherhood is within its rights to defend its insured in an underlying lawsuit subject to a complete reservation of rights. Compl. at ¶ 50. Brotherhood is choosing to assert those rights here. *See Charter Oak Ins. Co. v. Maglio Fresh Food*, 979 F. Supp. 2d 581, 597–98 (E.D. Pa. 2013) (discussing how insurer may use reservation of rights to pursue claim that its insured's loss was not covered under insurance policy, even while continuing to defend insured in underlying action); *Step Plan Servs.*, 12 A.3d at 419 ("An insurer's defense of the insured . . .

11

does not waive the insurer's claims that a policy exclusion applies." (citation omitted)). Whether coverage applies could involve some overlapping facts with the Underlying Action, but the distinct claims and parties mitigate the danger that Brotherhood's action in this court will create problematic conflicts of interest.

Finally, to the extent the *Summy* and other additional considerations are not already covered within the *Reifer* analysis, none present any reason to decline jurisdiction. This case does not duplicate a state action for the reasons discussed *supra*. Additionally, the parties have not argued, nor is the court aware of, any uncertainty or indeterminacy in applicable state law that would give pause to this court's exercise of jurisdiction. *See Summy*, 234 F.3d at 135. Ultimately, the court does not see any additional factors that merit consideration or that might sway the analysis away from the impending conclusion that the court should exercise jurisdiction over this case.

### III.     CONCLUSION

The court finds that exercise of jurisdiction under the DJA is proper in this case. The absence of a parallel state proceeding heavily favors this court's exercise of jurisdiction. In addition, while the public interest in this litigation weighs in favor of state court adjudication, the other seven *Reifer* factors are either neutral or favor exercising jurisdiction, and the court's consideration of factors beyond *Reifer,* to the extent they are present and relevant, confirms this analysis. Accordingly, the court will deny the motion to dismiss and elect to exercise jurisdiction over this declaratory judgment action.

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.